# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Room 409 at the Mediterranean Inn located at 425 Queen Anne Ave N, Seattle, Washington 98109 et al. | )<br>)<br>)  Case No. **MJ18-528**<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1 and A-2, which are incorporated herein by reference.

located in the _____Western_____ District of _____Washington_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1 and B-2, which are incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
  ☑ evidence of a crime;
  ☑ contraband, fruits of crime, or other items illegally possessed;
  ☑ property designed for use, intended for use, or used in committing a crime;
  ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 371; 22 USC 2778; 18 USC 554; 18 U.S.C. 922(g)(5)(B) | Conspiracy; Arms Export Control Act; Smuggling; Alien in Possession of a Firearm |

The application is based on these facts:
Please see Affidavit of HSI Special Agent Lindsey Smith

  ☑ Continued on the attached sheet.
  ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Lindsey Smith, Special Agent (HSI)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11-9-18

*Judge's signature*

City and state: Seattle, Washington

Paula L. McCandlis, United States Magistrate Judge
*Printed name and title*

USAO# 2018R01374

## AFFIDAVIT OF LINDSEY SMITH

STATE OF WASHINGTON  )
                     )  ss
COUNTY OF KING       )

I, Lindsey Smith, having been duly sworn, state as follows:

### AFFIANT BACKGROUND

1. I am a Special Agent with the U.S. Department of Homeland Security, Homeland Security Investigations ("HSI"), assigned to the Office of the Special Agent in Charge, Seattle, Washington. I have been employed as a Special Agent with HSI since 2008. I am currently assigned to the Counter-Proliferation Investigations Group, where I investigate cases involving the illegal export of weapons and other items from the United States.

2. I have received formal training at the Federal Law Enforcement Training Center in Glynco, Georgia and advanced training in Counter-Proliferation Investigations. Based on my training and experience, I am familiar with the manner in which individuals illegally acquire and export controlled merchandise from the United States to foreign countries.

3. I make this affidavit in support of an application for search warrants to search the hotel room and cell phone described in Attachments A-1 and A-2, which are incorporated by reference. I seek authorization to seize the items that are described in Attachments B-1 and B-2, which are incorporated herein by reference.

4. As discussed below, there is probable cause to believe that the hotel room described in Attachment A-1, and the phone described in Attachment A-2, contain evidence of violations of the Arms Export Control Act, 22 U.S.C. § 2778, and the International Trafficking in Arms Regulations, 22 C.F.R. Part 120 et seq., as well as violations of Title 18, United States Code, Section 554, conspiracy to violate the Arms Export Control Act, 18 U.S.C. § 371, and Alien in Possession of a Firearm, 18 U.S.C. § 922(g)(5)(B).

AFFIDAVIT OF LINDSEY SMITH - 1
USAO 2017R00034

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

5. The facts set forth in this Affidavit are based on my own personal knowledge; information obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of cooperating witnesses; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

6. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I, or others, have learned during the course of this investigation.

## RELEVANT LAW PERTAINING TO ARMS EXPORT CONTROL ACT

7. The Arms Export Control Act ("AECA"), as amended, authorizes the President of the United States to control the export and import of "defense articles" and "defense services" by designating those items and services that shall be considered defense articles and defense services.

8. The President of the United States, by Executive Order 13637, delegated his statutory authority to promulgate regulations with respect to exports of defense articles and defense services to the United States Secretary of State. The Department of State, exercising this authority, promulgated the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. Parts 120-130.

9. Items and services constituting "defense articles" and "defense services" are set forth in the United States Munitions List ("USML"), 22 C.F.R. Part 121.1. Category I of the USML includes firearms, close assault weapons, and combat shotguns. As a result, the export of these defense articles requires a license or other written authorization from the State Department's Directorate of Defense Trade Controls ("DDTC").

10. The definition of "export" in the ITAR includes the sending or taking of a defense article out of the United States in any manner. *See* 22 C.F.R. Part 120.17.

AFFIDAVIT OF LINDSEY SMITH - 2
USAO 2017R00034

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## SUMMARY OF INVESTIGATION

11. In the summer of 2016, a confidential informant ("CI") traveled to Lebanon for personal reasons. During his/her travels, the CI visited a firearms store in Tripoli, a city located in northern Lebanon. While at the store, the CI spoke with the shop owner, who identified himself as Hicham DIAB. The CI and DIAB had further conversations at the store on a few other occasions during the CI's trip. Through their discussions, DIAB learned that the CI resided in the United States. DIAB asked the CI if he/she had access to firearms, and, if so, would he/she be willing to sell them to DIAB. DIAB told the CI that he had received M4 barrels from the United States that were smuggled inside of air conditioning tubes.[1] The CI noticed that DIAB had for sale in his shop a variety of firearms, including high-end firearms, Russian-made firearms, and higher-end firearm components from U.S. companies. The CI later returned to the United States and contacted HSI regarding DIAB's interest in obtaining firearms from the United States.[2]

12. Following the CI's travel to Lebanon and at the direction of HSI, the CI conducted a series of phone calls with DIAB. The phone calls were recorded, and conducted in Arabic. Specifically, on January 25, 2017, the CI told DIAB that he/she knew people who were interested in selling firearms, but that they were nervous to conduct business with people in Lebanon. DIAB replied that the individuals would benefit because "They will sell it… they will sell it … they will sell it, for example, illegitimately, he will benefit and you will benefit." DIAB said that he would "give them the name of a company" to use for shipping.

13. During a phone conversation on January 31, 2017, the CI told DIAB he/she had met with the two individuals, *i.e.*, two undercover agents ("UCAs"), and that the UCAs said that the United States is "very rigorous" about exporting firearms and that "without a permit… a permit uh… specifically issued for exporting, [Sighs] they are in

---

[1] The M4 is a U.S.-manufactured, magazine fed rifle that can be fired in semi-automatic or automatic mode. It is widely used throughout the U.S. military.
[2] The CI has been paid for his/her efforts in this case.

AFFIDAVIT OF LINDSEY SMITH - 3
USAO 2017R00034

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

violation of all uh… the federal laws", and that "no doubt they are afraid. These guys are saying in a very specific way that there is no joke about this matter." DIAB responded, "You will be working in the 'black market'" and said "there is a lot of gain by going through the illegitimate way."

14.  On February 3, 2017, the CI and the UCAs called DIAB. During the call, the CI introduced the UCAs to DIAB. DIAB said that he wanted 500 Glock, model 19 pistols. DIAB also expressed interest in purchasing 1000 M4 bolt carriers that could function in fully-automatic M4 rifles. As for payment, DIAB and the UCAs discussed using a fake company to transfer the funds, as a way to avoid tracing the real source of the funds. DIAB claimed that he was "1000%" confident that he could successfully smuggle the guns and parts out of the United States. DIAB and the UCAs agreed to meet at an upcoming firearms show in Germany.

15.  On March 21, 2017, UCA1 and the CI met with DIAB in Frankfurt, Germany. The CI assisted in translating. UCA2 joined part of the meeting via video conference from the United States. During the meeting, DIAB and the UCAs discussed procuring firearms and how to ship them. The UCAs told DIAB that the guns needed "licensing." DIAB stated that the most important thing was for the UCAs to put their "trust in me and that there is no betrayal." DIAB said: "I do not want the government to be after me, let it not be any kind of revelations, for example, for later on. This business I am doing … the guns and certainly it is not legitimate." UCA1 explained that it was risky for the UCAs as well, since they would need licenses to complete the export legally. DIAB stated that "certainly the work we are doing is not legitimate." The CI replied, "There is danger," to which DIAB responded, "certainly." In regards of how to ship the items out of the United States, UCA2 said: "If he (DIAB) knows how to do it, we need… we need to know how to do it because we don't, we don't, [Sighs] we don't, uh… we're not smugglers man, we're just…we're just gun people… you know?" DIAB replied: "The weapons will be hidden in something." DIAB asked the UCAs if they had an

AFFIDAVIT OF LINDSEY SMITH - 4
USAO 2017R00034

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

available space to pack car parts with guns. DIAB told the UCAs: "I am coming to visit you in the United States, and I'm going teach you a lot of stuff."

16. DIAB said wanted only 100, not 500 Glock firearms. DIAB explained that they needed to build trust before moving onto a bigger deal. UCA2 said that he was unwilling to do a deal for only 100 guns because of the high risk involved compared to the low reward of a small deal. DIAB and the UCAs ultimately reached a tentative deal for 200 Glock firearms.

17. Over the span of several months following the meeting, the CI, DIAB, and the UCAs conducted several phone conversations regarding the firearms deal. The CI assisted in translating for the UCAs whenever they were present. During one of the phone conversations on June 26, 2017, DIAB told UCA1 that he would come to the United States to bring the UCAs money and to show the UCAs how to package the guns. DIAB said it was very important that he trusted the UCAs to be able to package the guns correctly. DIAB emphasized that he planned to do a large order in the future and that he didn't want the UCAs to do a poor job or otherwise his "neck [was] in their hands." DIAB also asked how much currency he could carry with him to the United States.

18. During a phone conversation on August 25, 2017, DIAB told the UCAs that he had received a visa to travel to the United States. DIAB told the UCAs that it would be important to ensure that no one would be surveilling them during his visit, and that he wanted everything to be secure.

19. During a phone conversation on September 7, 2017, DIAB told the UCAs that he wanted to conceal the guns in car parts, such as the front ends of vehicles. DIAB said he wanted to use Honda parts. DIAB also wanted the UCAs to ensure that the location of the warehouse where the guns would be packed be secure. DIAB requested that the UCAs find the warehouse location and the car parts, and that he would travel to the United States to show the UCAs how he wanted the guns packaged.

20. DIAB did not travel to the United State to complete the deal for the 200 guns. However, from October 2017 to August 2018, DIAB and the CI maintained

AFFIDAVIT OF LINDSEY SMITH - 5
USAO 2017R00034

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

contact by phone, text, and in person when the CI would travel to Lebanon for personal travel. DIAB continually assured the CI that he was trying to solidify the firearms deal with his customers.

21. During a phone conversation on September 20, 2018, DIAB told UCA1 that he planned to ship a car without a shipping container. He said he would travel to the United States to buy a car, package what he could into it, and ship the car in the name of another company to Lebanon. DIAB said that this first car shipment would be a test, and he requested the UCAs to procure a "bolt carrier with everything that goes with it," and a "lower kit" that could fire "single, semi, and burst." UCA1 said that there was too much risk and not enough profit in attempting to ship such a small amount, that it would just bring trouble. DIAB stated that the "end user" wanted to test the items to make sure the items were acceptable, and that if everything was good then very large orders would follow. DIAB suggested that he could pack twenty-five to thirty handguns into the car, along with the aforementioned parts, and that he would immediately compensate the UCAs. UCA1 replied that he and UCA2 would need to decide if they wanted to proceed with the deal. DIAB said "time is of the essence" to him and that he wanted the deal to be done by November. DIAB said that they should "pray that this first one goes well, because what's coming is going to be so good, what the UCAs make in four years, they will make in one month."

22. During a phone conversation on September 26, 2018, UCA1 told DIAB that UCA2 wasn't willing to get back into business with DIAB but that he might reconsider if the deal looked like it was really going to happen. DIAB said he wanted to start business and see how much he could pack into a car. DIAB said he would start with an order of 25 handguns and see how they fit in the car. DIAB requested that 30-round magazines be included with 10 of the guns. DIAB asked how soon UCA1 could be ready. UCA1 replied within 30 days. DIAB then asked UCA1 if they needed money in advance. UCA1 said they could get things ready before DIAB got to the United States if they were paid in advance. DIAB and the UCA1 agreed on DIAB paying $10,000 up

AFFIDAVIT OF LINDSEY SMITH - 6
USAO 2017R00034

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

front to start the order, $13,000 when DIAB was in the United States, and the remaining balance of $11,000 when the shipment was delivered in Lebanon. UCA1 also agreed to include the bolt carrier that DIAB requested previously. When asked about a vehicle to use, DIAB requested a 2011 or 2012 Honda CRV, which DIAB agreed to pay for.

23. On October 9, 2018, the CI received a text from DIAB showing a receipt of a wire transfer in the amount of $10,000 made to UCA1. This wire transfer was confirmed with the financial institution.

24. On October 15, 2018, the CI spoke with DIAB over the phone. During the call, DIAB told the CI that he was planning to fly to the United States on November 7, 2018, and he would be traveling to the United States with a second individual, a Canadian citizen, who would help translate and help package the guns into the vehicle. DIAB also stated he would wire another $10,000 to the UCAs.

25. On October 18, 2018 the CI conducted a recorded phone call with DIAB. DIAB asked if the UCAs had grenade launchers that attach to M4 rifles, and also asked about a .50 caliber sniper rifle. The CI replied that grenade launchers are illegal to possess as civilians, but that the UCAs might have access to them.

26. On October 27, 2018, the CI received a text from DIAB with several photos. The photos included the passport biographical pages for DIAB and a second individual, Nafez EL MIR, a Canadian citizen who appears to be living in Lebanon.

27. On October 28, 2018, the CI spoke with DIAB over the phone. DIAB said EL MIR would handle the shipping of the car. DIAB also said that he only needed an hour to pack the car. DIAB inquired about many guns, including custom engraved guns and sub-machine guns and said he would like to visit a big gun store during his visit in the United States.

28. On October 30, 2018, the CI received a photo from DIAB via text reflecting a receipt of a wire transfer in the amount of $10,000 made to UCA1. This wire transfer was confirmed with the financial institution.

AFFIDAVIT OF LINDSEY SMITH - 7
USAO 2017R00034

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

29. On November 7, 2018, at approximately 10:40 a.m., Hicham DIAB and Nafez EL MIR arrived at the Seattle Tacoma International Airport after taking a flight from Dubai, UAE. They arrived on tourist visas and have no other legal status in the United States. After passing through passport control and customs clearance, DIAB and EL MIR were met by the UCAs and the CI.

30. EL MIR asked the UCAs if they had a shipping company to handle the vehicle. EL MIR emphasized that it was important to know whether the car would be shipped in a container or not.

31. The UCAs and CI took DIAB and EL MIR to their hotel to check in. DIAB then requested that the UCAs take him to their warehouse to see the guns. EL MIR decided to stay at the hotel to rest.

32. The UCAs took the CI and DIAB to the warehouse. At the warehouse, DIAB was able to inspect the Honda CR-V and weapons that he had purchased from the UCAs, as well as additional weapons he had requested to see. One of the additional weapons was a grenade launcher, which DIAB agreed to purchase.

33. After inspecting the firearms, the UCAs, the CI, and DIAB went to lunch. DIAB continued to ask the UCAs for prices for various guns. After lunch, DIAB requested plastic bubble wrap to pad the firearms for packing in the car. The UCAs, the CI, and DIAB went to a local hardware store to purchase bubble wrap, tools to disassemble the car, and plastic wrap. The UCAs, the CI, and DIAB then returned to the warehouse.

34. At the warehouse, DIAB began to disassemble the panels inside the vehicle and instructed the UCAs to observe him. DIAB then began to wrap the Glock 19 handguns, first in a cloth, then with bubble wrap, and finally in plastic wrap. As DIAB wrapped the handguns, he started concealing them inside the rear quarter-panel voids of the car.

35. On November 8, 2018, the UCAs and CI met with DIAB and EL MIR for breakfast. During breakfast, EL MIR initiated conversation regarding how the vehicle

AFFIDAVIT OF LINDSEY SMITH - 8
USAO 2017R00034

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

would be shipped. EL MIR asked the UCAs if they knew of a company that would ship a vehicle to Lebanon. EL MIR explained that they had originally planned to buy a car from a contact in North Carolina, get the car to the UCAs in Seattle to pack, and then send the car back to the contact in North Carolina to export out of the United States. EL MIR also mentioned several times that it might be better to transport the car to Florida and ship the car to Lebanon from there. EL MIR wanted to know under what name they could ship the vehicle under and suggested the UCAs open a business under which they could ship cars overseas. EL MIR said he had a company in Lebanon that he uses, and mentioned that he could open a company in the United States. EL MIR asked if the UCAs would ship the car in their names. UCA1 said they couldn't put the car in their names since the guns could come back to the UCAs. EL MIR acknowledged and agreed. EL MIR suggested he could go to a local Lebanese restaurant and try to befriend a Lebanese person to put the vehicle in that person's name to ship it. During breakfast, DIAB began showing UCA1 information on his phone regarding firearm accessories that he was interested in purchasing.

36. Following breakfast, the UCAs, DIAB, and EL MIR traveled to the warehouse to finish packing the car. At the warehouse DIAB and EL MIR immediately began disassembling the left rear quarter-panel of the vehicle. DIAB and EL MIR then filled that void with Glock 19 handguns. They then disassembled the back panel on the hatchback door and continued concealing Glock 19 handguns, a Smith & Wesson .50 revolver, and one FN Fiveseven pistol inside the voids of the door. DIAB and EL MIR then began to package all the Glock and FN magazines in the same manner as the handguns. DIAB placed all the components for a lower kit for a AR15 rifle into one bag, then wrapped it in plastic. DIAB also wrapped a M203 grenade launcher in the same manner as the handguns. EL MIR took photos with his cell phone of the vehicle with the phone that is described in Attachment A-2.

37. DIAB and EL MIR began discussing getting another vehicle as they were running out of space to conceal all the weapons they were planning to ship. DIAB said

AFFIDAVIT OF LINDSEY SMITH - 9
USAO 2017R00034

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

they were planning to carry the cleaning kits and additional handgrips included with each handgun in their luggage on their return trip home.

38. Upon exiting the warehouse at approximately 12:30 p.m., HSI and ATF Special Agents arrested Hicham DIAB and Nafez El MIR. The phone that is described in A-2 was seized from EL MIR.

39. Surveillance observed that DIAB and EL MIR were staying at the hotel room described in Attachment A-1. After the arrest, agents requested that the hotel not access the room until this warrant was obtained and executed.[3] The CI said that DIAB told him/her that he had $8000 in cash in his possession as DIAB was walking into the hotel apart from the money that DIAB gave to the CI. At the time of arrest, EL MIR had in his possession $3000 and DIAB had $5000.

40. Based on my training and experience, I also known that individuals conspiring together to commit criminal activity, such as DIAB and EL MIR often communicate with each other by text.

---

[3] In executing this warrant, agents do not intend to search any digital devices. If agents come across any digital devices in the room that appear connected to this offense, agents will seize the device and seek a warrant from this Court before any search is conducted.

AFFIDAVIT OF LINDSEY SMITH - 10
USAO 2017R00034

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CONCLUSION

41. Based on the forgoing, I submit that there is probable cause to believe that the property described in Attachments A-1 and A-2 contains evidence of the crimes identified above, and therefore I request authorization to search and seize the items that are described in Attachments B-1 and B-2.

_____
LINDSEY SMITH, Affiant
Special Agent, HSI

SUBSCRIBED AND SWORN before me this 9th day of November, 2018.

_____
PAULA L. McCANDLIS
United States Magistrate Judge

AFFIDAVIT OF LINDSEY SMITH - 11
USAO 2017R00034

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT A-1
## PROPERTY TO BE SEARCHED

The property to be searched is room 409 at the Mediterranean Inn located at 425 Queen Anne Ave N, Seattle, Washington 98109.

ATTACHMENT A-1
USAO# 2018R01374

## ATTACHMENT B-1

### ITEMS TO BE SEIZED

All evidence, fruits, and instrumentalities related to violations the Arms Export Control Act, 22 U.S.C. § 2778, and the International Trafficking in Arms Regulations, 22 C.F.R. Part 120 et seq., as well as violations of Title 18, United States Code, Section 554, conspiracy to violate the Arms Export Control Act, 18 U.S.C. § 371, and Alien in Possession of a Firearm, 18 U.S.C. § 922(g)(5)(B), that is:

1. Documents relating to the export of any firearms or components that are covered by the United States Munitions List.

2. Documents relating to U.S. export or customs restrictions, regulations, provisions or laws.

3. Documents related to travel to the United States.

4. Documents relating to the purchase of any vehicles.

5. Any cash exceeding $500.

6. Any address, contact books, or other documents containing address information reflecting those involved in any exports, purchase of firearms, or purchase of vehicles.

7. Documents sufficient to show dominion and control.

**THIS WARRANT PERTAINING TO THE SEARCH OF THE PROPERTY DESCRIBED IN ATTACHMENT A-1 DOES NOT AUTHORIZE THE SEARCH OF DIGITAL DEVICES.**

ATTACHMENT B-1
USAO# 2018R01374

**ATTACHMENT A-2**
**PROPERTY TO BE SEARCHED**

The property to be searched is a silver iPhone Model A1457 that was seized from NAFEZ EL MIR, on November 8, 2018, and within the possession of Seattle HSI.

ATTACHMENT A-2
USAO# 2018R01374

## ATTACHMENT B-2

## ITEMS TO BE SEIZED

All evidence, fruits, and instrumentalities related to violations the Arms Export Control Act, 22 U.S.C. § 2778, and the International Trafficking in Arms Regulations, 22 C.F.R. Part 120 et seq., as well as violations of Title 18, United States Code, Section 554, conspiracy to violate the Arms Export Control Act, 18 U.S.C. § 371, and Alien in Possession of a Firearm, 18 U.S.C. § 922(g)(5)(B), that is:

    a.    Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);
    b.    Stored list of recent received, sent, and missed calls;
    c.    Stored contact information;
    d.    Stored photographs of firearms, ammunition, accessories, vehicles, or materials used to conceal firearms, ammunition, or accessories, including any embedded GPS data associated with those photographs;
    e.    Stored text messages.

ATTACHMENT-B
USAO# 2018R01374